UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE BROWN,<br>   Plaintiff,<br>v.<br>STATE OF CALIFORNIA, et al.,<br>   Defendants. | Case No. 18-cv-07826-EMC<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION TO STRIKE AND MOTION FOR SANCTIONS; (2) GRANTING STATE DEFENDANT'S MOTION TO DISMISS; (3) GRANTING GOVERNOR DEFENDANT'S MOTION TO DISMISS; AND (4) GRANTING COUNTY DEFENDANT'S MOTION TO DISMISS**<br><br>Docket Nos. 16, 25, 32, 37, 38 |

Pro se Plaintiff Alice Brown was allegedly subjected to an unlawful traffic stop by Officer Ethan Miller ("Officer Miller") of the Crescent City Police Department ("CCPD"). Ms. Brown brings suit under 42 U.S.C. § 1983 against the State of California ("the State"), the Governor of California ("the Governor"), the County of Del Norte ("the County"), the City of Crescent City, Crescent City Manager Eric Wier, the CCPD, Officer Miller, and the CCPD Chief of Police. The complaint asserts five claims: Fourth Amendment violations by Officer Miller; Fifth Amendment violations by Officer Miller; Fourteenth Amendment violations by Officer Miller; Fourth, Fifth and Fourteenth Amendment violations by all Defendants; and defamation of character by Officer Miller.

The State, the County, and the Governor each filed a motion to dismiss Ms. Brown's fourth claim. *See* Docket No. 16 ("State Mot."), 25 ("County Mot."), 32 ("Gov. Mot."). Ms. Brown then moved to strike the State's motion and the Governor's motion because they were not properly served on her. *See* Docket No. 37 ("Strike Mot."). Ms. Brown also filed an Ex Parte

Application to Impose Sanctions and Criminal Penalties against the State and the Governor for improper service. *See* Docket No. 38 ("Sanctions Mot.").

For the reasons discussed below, the Court **DENIES** Ms. Brown's motion to strike and motion for sanctions, **GRANTS** the State's motion to dismiss **without leave to amend**, **GRANTS** the Governor's motion to dismiss **with leave to amend**, and **GRANTS** the County's motion to dismiss **with leave to amend**.

## I. BACKGROUND

A. Factual Allegations

The complaint alleges the following. On January 1, 2018, at 3:36 am, Plaintiff Alice Brown was pulled over in her car by Officer Miller of the CCPD when she was driving on Highway 101. Docket No. 1 ("Compl.") ¶ 6. Officer Miller claimed he initiated the traffic stop for a "suspected DUI." *Id.* ¶ 7. Ms. Brown was forced to submit to a "warrant check/search" and a seizure of her driver's license, registration papers, and insurance papers. *Id.* ¶ 11. She asserts that Officer Miller had no probable cause to make the stop, and specifically "had no suspicion or knowledge of any outstanding warrants [against her] and no reason to conduct a warrant check/search." *Id.* ¶¶ 7, 11. "The search for outstanding warrants came back negative." *Id.* ¶ 11. According to Ms. Brown, she was "racially profiled . . . due to [her] race being 'Black.'" *Id.* ¶ 15. Officer Miller was "acting pursuant to training, instruction, and departmental policy when he unlawfully detained [Ms. Brown] without a warrant," and his conduct was "the result of a longstanding practice or custom which constitutes the standard operating procedure of Del Norte County." *Id.* at 14.

Based on these facts, Ms. Brown brings suit against Defendants under 42 U.S.C. § 1983. Ms. Brown claims that all Defendants violated her Fourth, Fifth, and Fourteenth Amendment rights because "they had a duty to all citizens to ensure their constitutional rights are not violated by the adoption of unlawful detention policies for financial gain." *Id.*

B. Facts Relevant to Motion to Strike and Motion for Sanctions

Ms. Brown's motion to strike and motion for sanctions are both premised on the alleged failure of the State and the Governor to properly serve their motions to dismiss on her. She asserts

United States District Court
Northern District of California

1  that although the State's motion was filed on February 19, 2019, and the State's counsel Robert
2  Rogoyski declared that the motion had been served on Ms. Brown by mail, she did not receive it.
3  Strike Mot. at 7. After Ms. Brown notified Mr. Rogoyski, he agreed to resend the motion with
4  USPS tracking, and Ms. Brown received the State's motion on March 2, 2019. *Id.* at 7–8.

5  Ms. Brown also asserts that, after the Governor's motion was filed on March 13, 2019, it
6  was mailed to her with "[$20.40 in] postage due," which she could not afford to pay. *Id.* at 8. As
7  a result, she could not retrieve the motion and did not file a response to it. *Id.*

8  Mr. Rogoyski, who represents both the State and the Governor, avers that the Governor's
9  motion was served in the same way as the previous "successful mailing to [Ms. Brown]: prepaid
10 first-class postage and a tracking number." Docket No. 40-1 (Rogoyski Decl.) ¶ 5. However,
11 "[f]or reasons unknown to defendants, and without defendants' knowledge, plaintiff's local post
12 office . . . interpreted these first-class mailings as USPS Priority Mail and assessed an additional
13 fees [*sic*] of $6.80 postage due for each mailing." *Id.* Rogoyski subsequently "served additional
14 courtesy copies of the undelivered documents via regular, first-class mail" on March 26, 2019. *Id.*
15 ¶ 8.

16 On March 26, 2019, Ms. Brown filed a motion to strike the State's and the Governor's
17 motions to dismiss, as well as a motion for sanctions against the State and the Governor. She
18 argues that the Governor's failure to properly serve her caused her to be at a disadvantage in the
19 proceedings because she had to scramble to do research, prepare, and mail an opposition. Strike
20 Mot. at 6. She further contends that sanctions are warranted because the State and the Governor,
21 through Mr. Rogoyski, committed "serious improprieties by failing to properly serve court filings
22 upon Ms. Brown" even though they declared "under penalty of perjury that they served Brown
23 copies of documents in a sealed envelope with postage thereon fully prepaid." Sanctions Mot. at
24 8–9 (internal quotation marks omitted). Ms. Brown asserts that the language "postage thereon
25 fully prepaid" is false and therefore that the State's and the Governor's acts constitute the crime of
26 obstruction of justice under 18 U.S.C. § 1503. *Id.* at 9–10. She seeks sanctions in the amount of
27 $36,000 and criminal penalties. *Id.* at 11.
28

## II. MOTION TO STRIKE

Ms. Brown moves to strike the State's and the Governor's motions to dismiss pursuant to Federal Rule of Civil Procedure 12(f). Strike Mot. at 6. However, Rule 12(f) only allows a court to "strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). "A motion to dismiss is not a pleading." *Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005); *see* Fed. R. Civ. P. 7 (distinguishing motions from pleadings). Thus, the State's and the Governor's motions to dismiss cannot be struck under Rule 12(f). *See Shove v. Ayers*, No. C 08-2946 RMW (PR), 2009 WL 1561941, at *4 (N.D. Cal. June 3, 2009) (denying motion to strike a motion to dismiss because "[n]either a motion to dismiss nor evidence submitted in support of it constitutes a 'pleading'").

Even assuming a motion to dismiss can be struck under Rule 12(f), Ms. Brown does not argue that the State's or the Governor's motions contain "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Nor does she dispute Mr. Rogoyski's explanation that the service issue with the Governor's motion was caused by the post office's mistake, and cites no support for the proposition that such a mistake can support striking a filing.

Accordingly, Ms. Brown's motion to strike is **DENIED**.

## III. MOTION FOR SANCTIONS

Ms. Brown's motion for sanctions also suffers from numerous defects. First, it is improperly styled as an ex parte motion. Civil Local Rule 7-10 allows a party to "file an ex parte motion . . . only if a statute, Federal Rule, local rule or Standing Order authorizes the filing of an ex parte motion in the circumstances," and requires the motion to "include a citation to the [relevant] statute, rule or order." Ms. Brown does not cite any authority which would permit her to use an ex parte application to obtain the relief she seeks.

Second, Ms. Brown invokes Rule 11 as the basis for sanctions against Defendants, *see* Sanctions Mot. at 10, but she has not complied with Rule 11's safe harbor provision. The "safe harbor provision requires parties filing such motions to give the opposing party 21 days first to 'withdraw or otherwise correct' the offending paper." *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th

4

Cir. 2005) (quoting Fed. R. Civ. P. 11(c)(2)); *see Islamic Shura Council of S. California v. F.B.I.*, 757 F.3d 870, 872 (9th Cir. 2014) ("A motion for sanctions may not be filed . . . unless there is strict compliance with Rule 11's safe harbor provision."). Instead of serving defense counsel with her motion and providing them an opportunity to address the allegedly sanctionable conduct, Ms. Brown immediately filed an ex parte motion. The motion for sanctions thus cannot be considered. *See Barber v. Miller*, 146 F.3d 707, 710 (9th Cir. 1998).

Third, even if the Court were to consider the motion, Ms. Brown cites no legal authority to suggest that sanctions are warranted for a third-party mailing error. Mr. Rogoyski's uncontroverted declaration explained that the postage-due issue was caused by the post office misclassifying Defendants' first-class mailing as priority mail, which occurred without Defendants' knowledge. Rogoyski Decl. ¶ 5. Furthermore, Mr. Rogoyski corrected the problem by mailing additional courtesy copies of the documents on March 26, 2019. *Id.* ¶ 8. There is no factual basis for sanctions.

Finally, there is no basis for the Court to impose criminal sanctions against Defendants. Ms. Brown contends that Defendants' conduct constituted obstruction of justice in violation of 18 U.S.C. § 1503, and perjury in violation of 18 U.S.C. § 1621. But neither of these criminal statutes provide a private cause of action. *See also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1482 (9th Cir. 1997) ("18 U.S.C. § 1503 is a criminal statute that does not provide for a private cause of action"); *Fuller v. Unknown Officials from the Justice Dep't Crime Div.*, 387 F. App'x 3, 4 (D.C. Cir. 2010) ("To the extent appellant attempted to raise causes of actions based on criminal statutes, there is no private cause of action for perjury, 18 U.S.C. § 1621").

Accordingly, Ms. Brown's motion for sanctions is **DENIED**.

### IV. MOTIONS TO DISMISS

A. Legal Standard

Under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In considering such a motion, a court must accept all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted

5

inferences are insufficient to avoid a Fed. R. Civ. P. 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations," "it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 1067–68. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 678.

Ms. Brown is proceeding pro *se*. Therefore, the Court will construe her filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ("[W]e continue to construe *pro se* filings liberally when evaluating them under *Iqbal*.").

If a court dismisses a complaint, "leave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Bly-Magee v.* California, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

B. <u>State's Motion to Dismiss</u>

The State argues that Ms. Brown's claim should be dismissed because: (1) the Eleventh Amendment bars federal jurisdiction over claims against the State; and (2) the State is not a "person" that can be sued under § 1983. The State is correct on both counts.

Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984) (internal quotation marks and citations omitted). Here, the State has not consented to Ms. Brown's suit. Section 1983 does not override a state's Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979). Thus, the Eleventh Amendment forecloses Ms. Brown's claims against the State.

Moreover, the State is not a "person" that can be sued under § 1983, which applies to

[e]very *person* who, under color of any statute, ordinance,

> regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .

42 U.S.C. § 1983 (emphasis added). It is well-established that "[the] State itself is not a person under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 60 (1989). None of the cases Ms. Brown cites in her opposition brief address whether the State qualifies as a "person" under § 1983. *See* Docket No. 29 at 2.

Ms. Brown alleges in her opposition brief that the State can be sued under the California Tort Claims Act ("CTCA"). Docket No. 29 at 2. However, the Court cannot consider this new claim because it was not alleged in Ms. Brown's Complaint. *See Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 899–900 (9th Cir. 2007). Moreover, allowing Ms. Brown to amend her complaint to add a claim under the CTCA would be futile because the CTCA cannot overcome the State's Eleventh Amendment immunity from suit in federal court. *See Hoa v. Cate*, No. C-12-2078 EMC, 2012 WL 3939544, at *2 (N.D. Cal. Sept. 10, 2012) ("[T]he Ninth Circuit expressly held that the CTCA does not waive a state or state agency's Eleventh Amendment immunity from being sued in federal court.") (citing *Riggle v. State of Cal.*, 577 F.2d 579, 585–886 (9th Cir. 1978)).

Accordingly, Ms. Brown's claims against the State is **GRANTED without leave to amend**, because there are no facts that Ms. Brown can allege that would permit her to bring a § 1983 claim against the State.

C.  Governor's Motion to Dismiss[1]

The Governor contends that Ms. Brown has failed to state a cognizable claim against him because (1) the Eleventh Amendment precludes federal jurisdiction over him, and (2) the Governor is not a "person" subject to suit under § 1983. Gov. Mot. at 2.

---

[1] Ms. Brown has not filed an opposition to the Governor's motion since receiving follow-up mailing of the motion around March 26, 2019. However, Ms. Brown filed a brief in opposition to the State's motion on March 4, 2019 that was styled as an opposition to the Governor's motion as well. *See* Docket No. 29. In the absence of a separate opposition, the Court will treat Ms. Brown's brief as a general opposition to both motions.

7

The Governor, as a state official, is entitled to Eleventh Amendment immunity if he is sued in his official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Holley v. California Dep't Of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010). Ms. Brown does not make clear in her complaint whether she is suing the Governor in his personal or official capacity. However, all signs suggest that she intended to sue him in his official capacity. First, Ms. Brown does not allege that the Governor was personally or directly involved in her traffic stop, but rather makes a claim based on the actions of a CCPD officer. *See* Compl. at 14. Second, she served the complaint directly on the Governor's office. Third, she alleges that "[a]ll defendants are culpable" for Officer Miller's conduct "in that they had a duty to all citizens to ensure that their constitutional rights are not violated by . . . police officers who have adopted unlawful detention policies for financial gain." *Id*. This allegation indicates that Ms. Brown is faulting the Governor for inadequately discharging his official duties. If so, her claims against the Governor are barred by the Eleventh Amendment.

Furthermore, "state officials sued in their official capacities are not 'persons' within the meaning of § 1983." *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). This also forecloses Ms. Brown's § 1983 claim against the Governor.

However, it would not necessarily be futile for Ms. Brown to amend her complaint to bring a claim against the Governor in his individual capacity. To do so, Ms. Brown must "allege an affirmative link between *individual actions* by the governor and any injury to [her]." *Phillips v. Martz,* 262 F. App'x 780, 781 (9th Cir. 2007) (citing *Rizzo v. Goode*, 423 U.S. 362, 371 (1976)) (emphasis added). For example, an "affirmative link" could be shown where Officer Miller's misconduct was the result of "the adoption of any plan or policy by [the Governor] express or otherwise showing [his] authorization or approval of such misconduct." *Rizzo*, 423 U.S. at 371. If she is to sue the Governor in his individual capacity, Ms. Brown "must allege facts, not simply conclusions, that show that [he] was personally involved in the deprivation of h[er] civil rights." *Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998). However, Ms. Brown is forewarned that any such allegation must have a good faith basis in fact. She should be mindful of her obligations under Fed. R. Civ. P. 11 and of the risk of sanctions should she violate the rule.

8

Accordingly, Ms. Brown's claims against the Governor is **DISMISSED with leave to amend**.

D. County's Motion to Dismiss

The complaint alleges that the County is liable for Officer Miller's violation of Ms. Brown's constitutional rights under *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), because Officer Miller's actions were "the result of a longstanding practice or custom which constitutes the standard operating procedure of Del Norte County." Compl. at 14. The County responds that Ms. Brown's claims against it should be dismissed because (1) the complaint does not sufficiently allege a connection between the actions of Officer Miller (who is an employee of Crescent City) and the County, and (2) the allegations regarding the County's unlawful practice or custom are conclusory. County Mot. at 4–5.

The Supreme Court held in *Monell* that a "government entity may not be held liable under 42 U.S.C. § 1983[] unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). In order to establish liability for governmental entities under *Monell*, a plaintiff must prove (1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy or custom; (3) that this policy or custom amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy or custom is the moving force behind the constitutional violation." *Id.* (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

The "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The County points out that Officer Miller is an employee of Crescent City, not Del Norte County, and accordingly argues that the "direct causal link" required to impose liability on the County for Officer Miller's actions is absent. *See* County Mot. at 4–5. Ms. Brown responds in her opposition brief that "[t]he County of Del Norte and the City of Crescent City and its[] police force have cooperative agreements and contractual agreements that allow the overlapping jurisdiction within

city limits." Docket No. 33 at 2. She further asserts that the County and Crescent City have "a symbiotic relationship where City police routinely initiate unlawful traffic stops without probable cause to generate revenue for the County." *Id.*

Ms. Brown's response is problematic for several reasons. First, the Court cannot consider these facts because Ms. Brown did not plead them in her complaint. *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original).

Second, the allegations in Ms. Brown's complaint are similarly insufficient to establish it is plausible that "a policy, practice, or custom" of the County was "a moving force behind [the] violation of [her] constitutional rights." *Dougherty*, 654 F.3d at 900. *Monell* liability can obtain where a municipal employee committed the alleged constitutional violation pursuant to either "a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). Here, the complaint alleges that Officer Miller's unlawful actions were "the result of a longstanding practice or custom which constitutes the standard operating procedure of [the County]." Compl. at 14. This allegation offers no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. It is not accompanied by factual allegations even shedding light on what the policy and practice is, must less any details as to whether it is longstanding or widespread. The allegation is even more tenuous since Officer Miller does not work for the County. With respect to Ms. Brown's attempt to connect Officer Miller to a policy of the *County*, Ms. Brown provides no factual allegations to substantiate her bare assertion that the CCPD initiates unlawful traffic stops to generate revenue for the County, with the County's knowledge and approval.

Without more details, Ms. Brown has failed to state a plausible claim under § 1983. *See, e.g.*, *Mendez v. Becher*, No. C-12-4170 EMC, 2012 WL 12920630, at *1 (N.D. Cal. Nov. 7, 2012) (explaining that "conclusory statements regarding [] approving, ratifying, condoning, encouraging, or tacitly authorizing a pattern and practice of misconduct . . . do not suffice to state a cause of

10

action" for municipal liability) (citing *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012)).

Accordingly, Ms. Brown's claims against the County is **DISMISSED with leave to amend**.

### V. CONCLUSION

For the foregoing reasons, Ms. Brown's motion to strike and motion for sanctions is **DENIED**. The State's motion to dismiss is **GRANTED without leave to amend**. The Governor's and the County's motions to dismiss are **GRANTED with leave to amend**. If Ms. Brown wishes to amend her complaint, she must do so no later than **30 days** after the issuance of this Order.

This order disposes of Docket Nos. 16, 25, 32, 37, and 38.

**IT IS SO ORDERED**.

Dated: June 13, 2019

_____
EDWARD M. CHEN
United States District Judge