UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICE BROWN,<br><br>            Plaintiff,<br><br>     v.<br><br>CITY OF CRESCENT CITY, et al.,<br><br>            Defendants. | Case No. 18-cv-07826-EMC   (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 85 |

Plaintiff Alice Brown alleges that Crescent City Police Office Defendant Ethan Miller made a racially motivated traffic stop at 3:36 a.m. on January 1, 2018. ECF No. 1 (Complaint). Fact discovery closed on February 25, 2021, and we are now here on four discovery disputes.

   **1.     Jokes on Social Media**

First, during Miller's deposition, defense counsel instructed him not to answer when he was asked if he had posted jokes on social media about black people, Muslim people, immigrants or gay people. During the deposition, counsel did not state a reason for giving the instruction, but the defense now says it was based on privacy and lack of relevance.

"Generally, [social networking site] content is neither privileged nor protected by any right of privacy." *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 570 (C.D. Cal. 2012) (quoting *Davenport v. State Farm Mut. Auto. Ins., Co.*, 2012 WL 555759, *1 (M.D. Fla. Feb. 21, 2012)); *see also Voe v. Roman Catholic Archbishop of Portland*, 2015 WL 12669899, *2 (D.Or. Mar. 10, 2015) ("[T]he content of social networking sites is not protected from discovery merely because a

party deems the content 'private.'") (citations and quotation marks omitted). In cases involving requests for production – as opposed to deposition questions – "Courts within the Ninth Circuit have permitted discovery of a party's social media information and communications where the request was narrowed by websites or platforms, time-period, and content related to the case." *Hinostroza v. Denny's Inc.*, 2018 WL 3212014, *6 (D.Nev. June 29, 2018) (summarizing case law). As shown in the case law summarized in *Hinostroza*, *see id.*, courts have demanded a pretty solid showing of relevance and proportional scope before requiring a litigant to turn over his or her social media posts.

The calculus is different here, though, because we're talking about deposition questions, rather than the social media posts themselves. The deponent's answers will be limited by human memory. There is no burden on a witness to testify from memory, so the limits on document sources and time periods that are a normal part of document collection and production do not apply in the same way to deposition questions.

The important issue, therefore, is relevance. The deposition questions at issue are not specific to the traffic stop on January 1, 2018, or to anything Miller did in his capacity as a police officer. Rather, Brown alleges that Miller conducted the traffic stop for a racially motivated reason. Because juries cannot read minds, unless Miller made racial comments at the time or admitted this was his motivation, Brown will need circumstantial evidence to show racial motivation. If Miller posted jokes about black people on social media, that would show that he harbors racist beliefs, which makes it more plausible that he may have conducted a racially motivated traffic stop. The Court understands the distance between (1) evidence that someone told a racist joke and (2) concluding that on a specific day a particular action he took was racially motivated. Nonetheless, Brown is allowed to take discovery into circumstantial evidence of racial animus, and it is for the trier of fact to determine how persuasive it is. Accordingly, Brown may ask Miller about any jokes he may have posted about black people on social media, including reasonable follow up questions about any such jokes, such as details about the jokes and whether and when he deleted them. The Court orders that this deposition take place within 30 days.

The Court denies the motion to compel as to jokes about Muslims, immigrants and gay

people. There is no allegation in this case that Miller committed any improper actions on the basis of animus toward those groups, so those questions are not relevant. During oral argument, Brown argued that questions about other forms of animus are relevant to the more general subject of bigotry. While that may be true, the pleadings frame what is legally relevant, and here Brown alleges that she is black and was racially profiled. She does not allege that she is Muslim, an immigrant or gay, or that Miller took action against her based on animus toward those groups. The Court is willing to cast a broad net in an effort to find circumstantial evidence of racial animus, but it is difficult to understand how telling a joke about gay people on social media could be relevant to showing that a traffic stop Miller made three years ago was based on race.

### 2.    Participation in Protests

Defense counsel also instructed Miller not to answer when he was asked whether he had ever participated in a counter-protest to a Black Lives Matter protest or in a Blue Lives Matter protest. As with the question about jokes about black people, these questions are distant from the traffic stop on January 1, 2018. As discussed at the hearing, the Court's tentative inclination was not to order Miller to answer these questions. However, based on further reflection and having considered the oral argument, the Court concludes these questions are relevant enough to warrant deposition questions. Jokes about black people are a pretty good sign of racist intent, even though it is still a long way from a racist joke to the conclusion that a police officer did a particular thing on a particular day for a racist reason. By contrast, the meaning of participating in a counter-protest to a Black Lives Matter protest or in a Blue Lives Matter protest may be contested. Brown acknowledged this at the hearing and argued that follow up questions concerning the nature of the protests could shed light on that meaning. For example, if Miller participated in a peaceful Blue Lives Matter protest in which people carried signs affirming their support for the police, that would not likely amount to evidence of racist beliefs. By contrast, if Miller participated in a violent counter-protest to a Black Lives Matter protest, and if people were prominently displaying swastikas during the counter-protest, the trier of fact might find that to be circumstantial evidence that Miller harbors racial animus. Depositions are allowed to be exploratory, and a questioning attorney does not have to prove in advance that a line of questioning will definitely yield useful

1 answers, just that the questions are calculated to do so.

2 Further, Miller's argument that this line of questioning impinges on his First Amendment rights of political association, while having some force, is ultimately not persuasive. "The Constitution protects against the compelled disclosure of political associations and beliefs. Such disclosures can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87, 91 (1982) (citations and quotation marks omitted). However, Brown seeks to ask Miller about his participation in public protests, not about his private political associations. Black Lives Matter protests, counter-protests to Black Lives Matter protests, and Blue Lives Matter protests often garner media attention, and the protestors are sometimes photographed, not least by other protestors who disseminate pictures of the protests on social media to promote and publicize their cause. Participants in those protests do not think they are attending a secret meeting. Indeed, the point of a protest is to be public – if no one saw it, it would be a failure. Accordingly, while asking Miller about his participation in these protests does to a certain extent ask him about his political associations, it only asks about associations he chose to make public.

Therefore, the Court orders that Brown may ask Miller about his participation in any Black Lives Matter counter-protest or in any Blue Lives Matter protest, and may ask reasonable follow up questions concerning the nature of those protests and Miller's participation in them.

### 3. Preservation of Social Media Posts

Third, Brown requests an order requiring Miller to take affirmative steps to preserve his social media posts. The problem with this request is that fact discovery closed on February 25, 2021, ECF No. 77, the last day to move to compel was March 4, 2021, *see* Civil L.R. 37-3, and Brown has not moved to compel the production of those social media posts. Indeed, Miller says Brown did not even ask for them in discovery, and Brown does not dispute that. It seems, therefore, that Brown's ability to obtain this discovery is over, and the Court does not see why it should enter a preservation order only after fact discovery has closed.

### 4. Video of the Traffic Stop

During oral argument, Brown informed the Court that the fourth issue is now moot.

Accordingly, the Court takes no action on it.

**IT IS SO ORDERED.**

Dated: March 8, 2021

_____
THOMAS S. HIXSON
United States Magistrate Judge