1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6

7   ALICE BROWN,                                Case No.  18-cv-07826-EMC
8                        Plaintiff,
                                                **FINAL PRETRIAL CONFERENCE
9          v.                                   ORDER**
10  CITY OF CRESCENT CITY, et al.,
11                       Defendants.
12
13

14      Plaintiff Alice Brown initiated this suit against multiple defendants, including Crescent

15  City and several of its employees after she was subject to a traffic stop early in the morning of

16  January 1, 2018.  The parties agree that the only claim left for trial is a § 1983 claim for an

17  unlawful traffic stop by Defendant Officer Ethan Miller (predicated on the Fourth Amendment as

18  made applicable to the states by the Fourteenth Amendment).

19               I.        **TRIAL DATE & LENGTH OF TRIAL**

20      Jury selection shall take place on February 21, 2023 (Tuesday). Counsel shall be present in

21  the Courtroom at 8:00 a.m.

22      The jury trial shall begin on the same day and shall be completed no later than the

23  following day.  Trial shall last from 8:30 a.m. to 4:00 p.m. on the first day; thereafter, trial shall

24  last from 8:30 a.m. to 2:00 p.m.  Although the Court is dark on Thursdays, it shall permit jury

25  deliberations on Thursday, February 23, if necessary.  On all trial days counsel shall be present in

26  the Courtroom at 8:15 a.m. to discuss any matters requiring resolution prior to commencement of

27  trial at 8:30 a.m.

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

## II.   WITNESSES

Only two witnesses shall testify in this case, namely, the parties themselves (Ms. Brown and Officer Miller).  *See* Docket No. 124 (Appendix A).  For the reasons discussed below, the Court is not permitting Mr. Paul (a third party) to testify in support of Ms. Brown's case.  Each side has three and one-half (3.5) hours to present its case.  The allotted time covers opening statements, examination of witnesses, and closing arguments.

## III.   EXHIBITS

The parties have not filed separate exhibit lists.  There is a single exhibit list which identifies only three exhibits: (1) Officer Miller's body camera footage; (2) Ms. Brown's driver's license; and (3) the traffic incident report.  There are no objections and thus the exhibits are deemed admissible.

## IV.   MOTIONS IN LIMINE

Ms. Brown has not filed any motions in limine.  Officer Miller has filed three, which are addressed below.

A.   Defendant's Motion in Limine No. 1 (Docket No. 128)

In his first motion, Officer Miller seeks to exclude evidence or argument concerning any noneconomic damages suffered by Ms. Brown (such as emotional pain and suffering and loss of enjoyment of life, *see* Docket No. 126 (Plaintiff's proposed verdict form)) – in essence, restricting Ms. Brown to economic damages and punitive damages only.  According to Officer Miller, Ms. Brown has throughout this litigation sought only economic damages and punitive damages only and thus cannot now change her tune.  *See* Fed. R. Civ. P. 37(c)(1) (providing that, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless"); *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001) (noting that the offending party has the burden of proving that the failure to disclose was substantially justified or is harmless).

The Court **DENIES** the motion.  The Court shall allow Ms. Brown to testify about noneconomic damages such as emotional distress.  Ms. Brown's initial complaint, which she filed

while she was still proceeding pro se, cited humiliation as part of her injury. She also made reference in the complaint to seeking as relief "$62.34 cost of equipment & actual damages." Compl. ¶ 23. However, the Court gives Officer Miller some relief because there was also ambiguity in Ms. Brown's complaint. For example, even though Ms. Brown referred to "$62.34 cost of equipment & actual damages," she thereafter only described the equipment she had purchased (a dash cam). The prayer for relief also refers to the following relief only: "actual damages in the amount of $62.34 for reimbursement costs of dash cam," plus punitive damages. Similarly, in both her initial disclosures as well as in multiple CMC statements (including those filed after she obtained counsel to represent her), Ms. Brown identified only the cost of the dash cam and punitive damages as the relief being sought, and she did not disclose any calculations related to general damages pursuant to Federal Rule of Civil Procedure 26. Ms. Brown argues that, in the most recent Joint CMC Statement filed on December 1, 2022, she did clarify that emotional distress was at issue: "<u>Relief:</u> Plaintiff is seeking actual damages for $62.34 for reimbursement costs of a dash camera she purchased, *humiliation* and $5,000,000 in punitive damages against Officer MILLER." Docket No. 119 (Jt. CMC St. at 4) (filed on 12/1/2022; emphasis added). But by the time of this Joint CMC Statement, both fact discovery and expert discovery had already closed (on August 18, 2022 and September 29, 2022, respectively). *See* Docket No. 117 (order).

To ensure that any failure by Ms. Brown to clearly and timely disclose does not impose undue prejudice to Officer Brown, the Court shall allow Officer Miller to take a short deposition of Ms. Brown (within the next two weeks) so that he may question her about the alleged noneconomic damages suffered. In addition, the Court sets limitations on the scope of Ms. Brown's testimony on noneconomic damages allegedly suffered.

- She may claim only "general" and not "special" damages (*e.g.*, that she has suffered PTSD or any other diagnosed mental injury as a result).
- She may not ask the jury to award her a specific amount in noneconomic damages since she did not previously disclose a damages calculation to Officer Miller. *See generally Sandoval v. Am. Bldg. Maint. Indus.*, 267 F.R.D. 257 (D. Minn. 2007).

3

United States District Court
Northern District of California

1   But Ms. Brown is not barred from describing her emotional distress qualitatively –
2   *e.g.*, that it was substantial.

3   • She may testify about her experience on that morning only.  She may not testify
4   about other prior stops involving the City police or other prior incidents she has had
5   with the City police.

6   • She may testify that her subjective experience was, *e.g.*, informed by the fact that
7   she is a Black woman and/or her knowledge of other incidents involving Black
8   people being stopped by the police if that was, in fact, in her mind at the time of the
9   incident.  (But there may be some Rule 403 limits here – *e.g.*, general testimony
10  about the Black Lives Matter movement shall not be permitted.)

11  At the hearing, Ms. Brown argued that, if Officer Miller tries to characterize her as a
12  litigious person (based on other lawsuits filed), then he should be deprived of the benefits of the
13  Court's ruling herein.  However, the Court shall not prejudge the matter.

14  B.   Defendant's Motion in Limine No. 2 (Docket No. 129)

15  In the second motion in limine, Officer Miller asks the Court to exclude evidence or
16  argument "regarding Plaintiff's race or Plaintiff's race being a factor in [his] decision to make this
17  traffic stop" or related to "Black Lives Matter, racial protests or misconduct by police beyond the
18  allegations in this case."  Mot. at 1.  Officer Miller underscores that, previously, the Court granted
19  him summary judgment on Ms. Brown's claim for racial profiling.  *See* Docket No. 108 (Order at
20  11) ("hold[ing] that there is no genuine dispute that there is insufficient evidence to support a
21  claim of racial profiling").  In response, Ms. Brown argues that "[h]er subjective experience as a
22  black person is highly relevant and probative of the degree of humiliation, pain and mental
23  suffering that she subjectively experienced."  Opp'n at 2.

24  The Court **GRANTS** in part and **DENIES** in part the motion.  As discussed above, the
25  Court shall allow Ms. Brown to testify about how her subjective experience was informed by, *e.g.*,
26  her status as a Black woman.  However, the trial of this case shall not go into collateral matters
27  such as the Black Lives Matter movement.  In addition, before Ms. Brown's counsel begins to
28  question her about her noneconomic damages, he shall alert the Court that he intends to proceed

4

1    on this line of questioning, at which time the Court shall provide a limiting instruction, making

2    clear that there is no racial profiling or race discrimination claim against Officer Miller and that

3    her testimony is relevant only to show that she had pain and suffering beyond the "normal"

4    indignity or fear of being pulled over for a traffic stop without basis.

5    C.    Defendant's Motion in Limine No. 3 (Docket No. 130)

6         Finally, Officer Miller moves the Court to exclude evidence or argument related to "other

7    'questionable' traffic stops" he has made. Mot. at 1. This motion appears to be targeted to a

8    traffic stop involving a third party, William Paul. The motion is **GRANTED** in part and

9    **DENIED** in part.

10        Mr. Paul was identified in Ms. Brown's initial disclosures. *See* MIL No. 1, Ex. A (Initial

11   Disclosures at 2). Mr. Paul lives in Crescent City and "has his own federal lawsuit for a traffic

12   stop in [the] City, 20-cv-01967-CRB." Mot. at 3. In her opposition, Ms. Brown argues that, "had

13   the defense bothered to take the deposition of [Mr.] Paul, they would have learned of the relevance

14   of Mr. Paul's testimony." Opp'n at 3. According to Mr. Brown, his testimony is relevant because

15   his traffic stop was very similar to hers.

16           In both cases, the traffic stops were made by Officer Ethan Miller;
             the traffic stops in both cases were mere weeks apart and took place
17           in the early morning hours (Brown on 1/1/2018 at 3:37 a.m.; Paul on
             3/20/2018 at 2:30 a.m.[)]; in both cases Officer Miller travelled
18           Southbound on U.S. Highway 101 and made a U-Turn after
             encountering both Brown and Paul, who both travelled Northbound
19           on U.S. Highway 101 just before they were stopped by Miller; in
             both cases Brown and Paul allege a baseless pretext for the traffic
20           stop (driving "erratically" under the speed limit in Brown's case and
             "dim" rear view license plate bulb, in Paul's case).
21

22   Opp'n at 3-4. More important, during Mr. Paul's traffic stop, Officer Miller effectively admitted

23   that the traffic stop was baseless and indicated that all traffic stops at that time were baseless.

24           Paul will testify that when he asked Officer Miller why Paul would
             need to produce license, registration, and proof of insurance when
25           the claimed purpose of the traffic stop was to alert Mr. Paul to repair
             a "dim" bulb over his rear license plate, . . . Officer Miller told Mr.
26           Paul that he still had to produce his license, registration and proof of
             insurance. "But why?" asked Mr. Paul. Officer Miller responded[:]
27           "That's what we do out here at night. We pull everybody over."

28   Opp'n at 4.

5

United States District Court
Northern District of California

In assessing this motion in limine, the Court begins by noting that, although Ms. Brown identified Mr. Paul in her initial disclosures, he is not identified in the witness list provided as part of the parties' joint pretrial filing. At the hearing, Ms. Brown characterized this as a mistake and asked to amend her witness list.

The Court shall not permit amendment for several reasons. First, the request is tardy. Second, testimony by Mr. Paul would be contrary to Federal Rule of Evidence 404(b) which governs other "bad acts."[1] *See* Fed. R. Evid. 404(b)(1)-(2) (providing that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" although the "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Testimony by Mr. Paul also is not enough to support "habit" evidence. *See* Fed. R. Evid. 406. That Officer Miller alleged stopped Mr. Paul without basis in addition to Ms. Brown is not evidence of habit. Although Officer Miller allegedly stated, "We pull everybody over," that statement is vague; there is no information about how many times Officer Miller specifically has pulled people over without basis.

That being said, the Court notes that the Paul incident suggests that Officer Miller is untruthful – *i.e.*, Officer Miller's (alleged) statement to Mr. Paul that "[w]e pull everybody over" lends support to her position that she did not commit any traffic violation and that Officer Miller lied about her committing a traffic violation.

Because Officer Miller's character for truthfulness is at issue here, Federal Rule of Evidence 608 is implicated. Under Rule 608(b), "[e]xcept for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). Mr. Paul, therefore, cannot testify on the stand about his encounter with Officer Miller. However, "the court may, on cross-examination, allow [specific instances] to be inquired into if they are

---

[1] In his motion, Officer Miller invokes only Rules 402 (relevance), 403 (unfair prejudice), and 406 (habit).

probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid.

608(b). The Court therefore shall allow Ms. Brown to question Officer Miller, during cross-

examination, about whether he made the alleged statement to Mr. Paul. If Officer Miller denies

making the statement, Mr. Paul cannot testify as that would be extrinsic evidence.

To the extent Officer Miller has raised a Rule 403 objection, that objection is overruled.

So long as the questioning is not extensive (which would arguably get the jury off track into a

collateral issue of whether he was justified in stopping Mr. Paul), the probative value of the

evidence is not "substantially outweighed" by the danger of unfair prejudice.

## V.     PRELIMINARY STATEMENT TO THE JURY

The parties appear to have stipulated to a preliminary statement to the jury at Docket No.

127 (captioned "Joint Statement of the Case"). That statement provides as follows:

> Officer Ethan Miller, in the course and scope of his employment as a
> police officer for the City of Crescent City, made a traffic stop on
> January 1, 2018, of a car being driven by Plaintiff Alice Brown at
> approximately at 3:37 a.m. Officer Miller contends the stop was
> valid as it was early in the morning of New Year's Day, Plaintiff
> veered off the road and then quickly swerved back and her speed
> fluctuated between 5 to 10 MPH below the posted speed limit, all
> potential signs of intoxication. Plaintiff contends there was no valid
> reason for the stop as she did not veer off the road, was not
> intoxicated and controlled her vehicle in a lawful manner.

Docket No. 127. The statement seems reasonable and therefore shall be given, as stipulated to by

the parties.

## VI.     JURY INSTRUCTIONS

The Court will address the jury instructions in a separate order. The Court intends to file

proposed jury instructions and give the parties an opportunity to raise objections.

## VII.     JURY VERDICT FORM

At the hearing, the Court ordered the parties to meet and confer to see if they can reach

agreement on a general verdict form. The proposed general verdict form shall be filed by January

31, 2023.

## VIII.     VOIR DIRE

The Court shall include some of Ms. Brown's proposed voir dire questions (or some form

thereof) in a general questionnaire that is given to potential jurors before they come to the Courthouse.  The Court shall conduct an oral voir dire of jurors on February 21 and shall also give each party the opportunity to ask questions themselves.

**IT IS SO ORDERED**.

Dated: January 27, 2023

_____
EDWARD M. CHEN
United States District Judge